The next case is Wray v. Watnick. Good morning, Mr. Raymond. Good morning. If it may please the Court, my name is Frank Raymond, appearing on behalf of the Plaintiff Appellant Ames Wray. I'd like to begin my argument today with a quote from this Court's finding in Amalfitano, which was subsequently heard by the Court of Appeals. Quote, it would appear that some courts in New York have imposed an additional prerequisite to recovery, that the plaintiff in a Section 487 action show a chronic and extreme pattern of legal delinquency by the defendant. That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act. And that fundamentally is the question on appeal for this Court. This Court's finding that extrajudicial or extra-textual judicial additions to any deceit were unwarranted is central to the question. Why don't we just focus on whether there is any basis for finding intentional deceit in the first place before we worry about whether it is or needs to be extreme or egregious? Sure. And I think that that goes to the district court's analysis under Twombly. And I think that that is the first issue to be addressed here. I want to ask you specifically about the confession of judgment issue. In that case, you say that Mr. Watnick was guilty of deceit for saying that in the previous litigation, your client did not produce any drafts of the confession or written communications about the confession or notes about its drafting or its enforcement. And you say there were six documents that were produced. Now, I thought that Mr. Watnick's statement was more accurate than yours. Let me explain why, and you can tell me whether you think that someone could state a claim against you on the standard you profess. The issue here is about the drafting particularly. It may be that there's a little bit of exaggeration or a little bit of an opening in the reference to documents about. But of the six documents you refer to, one is the confession itself. One was admitted by Watnick who said, except for one, there were no documents produced. Two of the documents that you are relying on are post-date, the confession of judgment, and thus can't have anything to do with the drafting. One of the documents that was allegedly produced was not produced in discovery, which is what lawyers usually mean when they say produced. It was just something that was attached to the complaint in the underlying litigation. And, you know, when you get down to it, it seems to me that Mr. Watnick's statement is pretty accurate. And the statement that Mr. Ames produced six documents, not just one, that were responsive and relevant to this issue is highly misleading. I mean, my point is, you know, first of all, you can dispute if I've got those facts wrong. But my point is, so a lawyer makes a statement in a brief, not in an affidavit, not about some fact specifically in his knowledge that's contested in litigation, but about something about the record that someone could say, oh, that's not exactly right. That's a kind of exaggeration. We're sending all our lawyers to prison over this? No. Well, that's not necessarily the position that we've staked out, Your Honor. Well, you're saying that Mr. Watnick was guilty of a crime for the statement that Ames only produced one and most one document that's relevant to the drafting. You've plausibly stated that he has committed a crime is your position. I've plausibly stated that he meant to do that. And I do disagree with Your Honor's analysis on the factual. Well, tell me what other documents related to the drafting of the confession of judgment that were produced in discovery by Ames in the underlying litigation. Well, so Mr. Watnick's exact phrasing was that Mr. Ray did not produce any written communications about the subject confession, period. Now, as I laid out in the brief and as I attached his exhibits to the or as were attached his exhibits to the underlying motion practice, those each were, by and large, conspicuously absent from Ames' and Alcoa's, Alcoa was his lawyer, document productions, or any drafts of the confession, written communications about the confession, or notes about its drafting or its enforcement. In that context, you're taking that middle phrase, written communications about the confession, extraordinarily literally and out of context, aren't you? I don't think so, Your Honor. I mean, those were the words that the defendant chose. They were not the words that were thrust upon him. They were elected, and they were specific, and they communicated to the court that not one written communication was exchanged. And that turned out to not be true. And everybody in the litigation had access to the same discovery record. Both sides, it could be pointed out that this was an exaggeration. If anyone thought that that was such an exaggeration that it was worth making the point in a brief, that this was overstated. When the whole issue is, were there any documents that related to the drafting of the confession of judgment? That's what was really at stake in the litigation at that moment, right? That is correct, Your Honor. So tell me what it is that is relevant to the drafting of the confession that was disclosed in the way that lawyers would normally talk about it. That is to say, as part of a document production in response to a discovery request. Right. Well, as I submitted in the brief, each of those documents that you outlined, the six, they were each or written communications about that subject. Are they about the drafting? You're saying that two documents of the six that you are relying on, which post-date the drafting of the confession, are documents that show how it came about. That is correct. Well, that's not, no, that is not correct, Judge. Oh, so we have some room. We might exaggerate a little bit. We might characterize a certain way as lawyers in the interest of advocacy when it's you. If I may, Your Honor, I think that you highlight an important point here, that, yes, both of these parties had access to the records, but the judge has however many cases on his docket. And at the end of the day, he's relying on these assertions from these advocates to be correct. Yes, and I'm relying on your assertions because I had to go and dig back or have my law clerk dig back and find out what these six documents were in order to do this analysis. And that's right. And ultimately, when the court, the trial court in that particular situation was faced with that precise scenario, you know, they rely on the briefs. And fundamentally, the words that the defendants chose, written communication, I mean, you know, it's a question about whether or not we will hold attorneys to the words they use. And that is the words that he chose to use. And fundamentally, that these were written communications about that subject thing. Can I ask you about the Solomon action file, the litigation file? Sure. The request was she's unfairly denied evidence. It's severe because there are no documents to address these issues. And plaintiff's attorney had access to the Solomon action file. But then we find out that the lawyer for them in that case, Alkali, said there was a litigation file, but it wasn't preserved. So what's wrong about saying this is unusual, Your Honor, that we'd like to see those documents in that litigation file that a lawyer had that represented both of us, but we think there's something funny here in the spoilation motion because they say it's been destroyed. How is that intentionally deceitful to raise that to the trial judge? So, Judge, the broader argument there that you raise, specifically that, you know, the attorney in that subject instance did not put a litigation hold on those documents. That was made. That was advanced. And that was not incorrect. But that's a distinct argument from saying that there are no documents. What's a litigation hold? Well, I don't know that they defined it necessarily, Your Honor, but my understanding from having read the trial. I had a lawyer that represented the two of them against this contractor, and there were a lot of documents about that lawsuit. And this lawyer had a file in his office. I don't care about a litigation hold. But they say, Alkali, the lawyer said, yeah, I did have a file, a litigation file, but it wasn't preserved. Now, in a spoilation motion, what's wrong with saying, well, that doesn't make any sense, Your Honor. Why would he destroy a file? And my client was one of the clients in that case. How is that intentionally deceitful to say that? That's not intentionally deceitful, saying that there are no documents. I mean, because that's the thing. It's one thing to advance to the court that my adversary did not properly preserve documents, and ergo, I am deprived of an opportunity. But it's a distinct thing to say that I have no evidence, I have no documents, I have no opportunity to do it. You don't have many documents, that's for sure. And that is the honest argument. But that's not the argument that was made. And I think that's the point. And I think that again — All the lawyers who are sitting here are paying attention to this, duly noting that sometimes their adversaries are going to be inclined to accuse them of criminal conduct for statements and briefs of the sort that we've been discussing this morning. But, Judge, I do think that, you know, and I highlight this in my brief, you know, the defendant had an opportunity to correct that. You know, look, the standard is not one of unerring accuracy, nor could it be. The standard is one of candor. And where is the opportunity? Someone — so the other side wrote to him and said, gee, before I send an answer in, I'd like you to retract these very specific statements? Or, moreover, Your Honor, in opposition, if you see that, you know, you were incorrect, you correct it. And I have done that. And I have been incorrect. And I put in that reply where I said, look, Judge, you know what? He was right. You know? And I've had that situation in the past where I represented a — And what did Mr. Watnick say in his reply? Maybe something along the lines of, look, all this is a distraction from the central issue, which is that Al-Khalili destroyed relevant documents or that there's really nothing relevant, just as I argued to the court, to the drafting of the confession of judgment. His reply overlooked and intentionally overlooked what were the misrepresentations. So he wasn't astute enough to make a clever argument, a good argument, demolishing some effort to distract from the good points that he was making by highlighting technical inaccuracies in a phrase that was part of the argument. I think that saying technical inaccuracies diminishes it. And I think that fundamentally the question — and as this Court found in Amalfitano, to bring it full circle, I mean, look at the factual scenario in Amalfitano and compare it to that here. Look at — so in that case — Do you think that the statement that Ames produced six documents that were responsive in this matter is not misleading in a very similar way? Yes, absolutely, Your Honor. Okay. That's what you think. I absolutely do. And the worst one, by the way, the worst thing you've highlighted, it seems to me, or the most misleading, if you want to put it that way, is the one where he quotes the judge as saying that — although he's perfectly accurate in citing to the judge, the judge said that Ames admitted to abusing his wife. On the other hand, he did say, Mr. Ames, I'm sure that I hit her at some point, and then says, but it was only a joke and only a light hit. Now, I think it's a stretch to say that that's an admission of abuse. On the other hand, it isn't Mr. Watnick's characterization. It was the judge's characterization. And I must say, I don't think that any lawyer is obliged to take your client literally or to take him as being accurate in saying, oh, it was nothing, it was just a joke. That's what all abusers say about some of the contact that they have. I don't know why, you know, we have to acknowledge that that's literally correct, what he said. But I'll give you, that's the one that is most significant to me out of all the ones that you point to. And if I may build off that for a moment, Your Honor, I think that that highlights the precise issue here. You know, yes, he was quoting — he was citing to the trial court, but he was not quoting the trial court. He was individually asserting that that physical abuse happened. And he — No, he was individually saying that there was an admission to the abuse. And he — If he argued that the abuse happened, I think he'd have a solid basis in this expert excerpt. But he is saying, literally, that this was admitted to. On the other hand, do we have any idea whether Mr. Watnick, who came into the case long after — he was not present at this deposition, was he? No, he was not, Your Honor. So for all we know, he's quoting the judge because the judge's acknowledgment is all he looked at. That might be sloppy. But we want to distract from the action that is pending between the parties by chasing after Mr. Watnick, the lawyer for the wife in this litigation, with this kind of lawsuit. But, Judge, it's not sloppy. He was the attorney for a year at that point. And the subject content of that motion specifically revolved around that issue. And, look, you know, bigger picture, that charge, physical abuse of a spouse, is not an accident. Nobody does that accidentally. Well, but the charge was in reaction to an expert's report from the plaintiff saying there was no physical abuse. The psychiatrist said that, right? That's absolutely — — from a psychiatrist saying there's no physical abuse of her in this case. That's how this got teed up, right? That's correct, Your Honor. And for him to then respond, relying solely on the trial court's representation, when he had access to the woman who was allegedly abused. And that was his client. His deposition supports it, too. I mean, I know he kind of discounts it, but he did say he hit her. So cite the deposition. Be honest. So instead of what a judge of the Supreme Court of the State of New York has said, wrote? That's correct, Your Honor. By the way, was it the same judge or was it a different judge? Same judge, Your Honor. So the judge — the judge he's quoting it to is the very person who is responsible for this statement in the first place. That's correct. Going to bring any charges against the judge? Or I guess not, because he's not functioning as an attorney. That is correct, Your Honor. Okay. Lucky for him. All right. Thank you, Mr. Raymond. Ms. Corman? Good morning. May it please the Court, my name is Cheryl Corman, and I represent the appellee in connection with this matter. Does Section 4857 punish stupidity? Of course not, Your Honor. Thank you. Should I sit? I'm kidding. Clearly, the arguments that are being raised is just a perversion of Judiciary Law Section 487. Each of the individual statements, while they all might not have been 100 percent perfect, they certainly fall within the realm of zealous advocacy. There's nothing in any of the statements, and we can go through them individually, but I don't think that we need to waste the Court's time since everything is articulated in the briefs, that each and every one of them are certainly plausible discussions of the factual scenarios as they proceeded in connection with the litigation that has been ongoing for 18 years. This is clearly a litigation tactic brought to distract this case, a very acrimonious case that's been going on for over 18 years. The commencement of this action is simply a collateral attack on the existing action, and there are just so many things that are wrong with it. In addition to the fact that there's just no plausible statements that you can find an intent to deceive, there's also nothing plausibly suggesting that there were any damages proximately caused from any of these statements. Also, there was an opportunity when all these statements were raised in connection with the underlying litigation to discuss them, bring them to Judge Ramos' view, and to see if there were any issues with it. There were no issues with it. Also, certainly, court of appeals certification is not warranted since the determination of the purported issue as raised by Mr. Raymond would not result in a different determination from this Court. This Court can affirm the adjudication from the district court based solely on the fact that there was no plausible intent to deceive based upon all of the cases that have applied judiciary law. While there is a need, I believe, for an egregious finding, it's not necessary for this Court's determination. Plus, the split in authority isn't exactly as articulated by my adversary. There is a distinction as to whether or not you need a chronic pattern of legal delinquency. That's not an issue here. So while it might be a nice semantic argument for the New York State Court of Appeals, it's certainly not necessary for an adjudication of this case. We want this case to go forward in the trial action without these continued distractions, which are really, quite frankly, brought in bad faith. Unless the court has any questions, I'll simply rest on my brief. I have one question. Yes. This came up in the context of a spoilation motion by Christina against Ames, right? Yes. So did the district, I'm sorry, did the state judge, the Supreme Court judge conclude that there was no basis to believe there was spoilation on his part and on his lawyer's part? So in other words, spoilation is they intentionally destroyed documents that were going to be necessary for the litigation. That's what spoilation is, kind of. Exactly. So what was the conclusion? Was there any spoilation? I don't believe that there was. I'm sorry, I don't recall exactly, if you don't mind. Your Honor, if I may, it was granted at the lower court level and it was reversed. I saw, I know the summary judgment was reversed, but I read the, I think it was the first division ruling on it, but I didn't see anything about spoilation in that. I don't believe that was part of the, excuse me, that was not part of the appeal because technically it's an Illuminae application. And so the court, I believe, just didn't reach it because it's not an appealable paper. You don't know whether the trial judge found that there was or was not spoilation? Honestly, Your Honor, I don't recall right now. Thank you very much. I'm sorry, the court will reserve decision in the matter of Ames, excuse me, yes, Ames Ray versus Donald Watnick.